UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 5: 18-074-DCR |
| | ) | and |
| V. | ) | Civil Action No. 5: 20-366-DCR |
| | ) | |
| ELIEZER ALBERTO JIMENEZ, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Eliezer Alberto Jimenez has filed a *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  [Record No. 201]  Jimenez contends that a Minnesota conviction which increased his criminal history score at sentencing has now been vacated and would no longer be countable under the United States Sentencing Guidelines.  *See* U.S.S.G. §§ 4A1.1(d); 4A1.2 n.6.    As a result, Jimenez asserts that he is entitled to be resentenced under a recalculated Guidelines range.

In *Johnson v. United States*, 544 U.S. 295 (2005), the Supreme Court held that the "vacatur of a prior state conviction used to enhance a federal sentence" is a new "fact[]" that "can start the 1–year limitation period" for filing a § 2255 motion.  Although Jimenez contends that *Johnson* entitles him to relief, the limitations period is not implicated by his petition.  Nevertheless, courts applying *Johnson*, including the United States Court of Appeals for the Sixth Circuit, have concluded that claims based on vacated state convictions used to enhance a federal sentence are cognizable under § 2255.  *See Watt v. United States*, 162 F. App'x 486, 503 (6th Cir. 2006).

- 1 -

The problem for Jimenez is that he waived his right to collaterally attack the sentence. [Record No. 114, p. 5]  The Sixth Circuit generally enforces valid collateral-attack waivers, even when their enforcement affects constitutional rights.  *See United States v. Fleming*, 239 F.3d 761, 763–64 (6th Cir. 2001).  However, Jimenez suggests that the Court should disregard the waiver to "avoid injustice[]," invoking an exception to the enforceability rule not expressly recognized by the Sixth Circuit.  [Record No. 210, p. 4; *see* Record No. 212, pp. 8-10.]

The matter was referred to United States Magistrate Judge Hanly A. Ingram, who recommends that the motion be denied due to the waiver provision of the defendant's plea agreement.  [Record No. 212]  However, because the motion raises an issue not directly addressed by the Sixth Circuit, he also recommends that a Certificate of Appealability be issued.  [Record No. 212]  The United States filed an objection to the latter recommendation, contending that Jimenez's waiver bars the requested relief under binding Sixth Circuit precedent.  [Record No. 218]

Counsel was appointed to assist Jimenez in filing objections to the recommended disposition.  [Record No. 212]  Two objections were proffered.  First, counsel contends that the government and Magistrate Judge Ingram overlooked a claim for ineffective assistance of counsel (which would not be barred by the waiver) in his petition.  [Record No. 219, pp. 2-7]  The alleged ineffective assistance was trial counsel's recommendation at sentencing that he withdraw a *pro se* objection to his Presentence Investigation Report.  [*Id.*]  Alternatively, he argues that enforcing the waiver would amount to a miscarriage of justice.  Therefore, the waiver should be excused.  [*Id.* at pp. 7-8]

## I.      PROCEDURAL HISTORY

On February 7, 2019, a federal grand jury returned an Indictment charged Jimenez with conspiracy to commit money laundering related to drug trafficking in violation of 18 U.S.C. § 1956.  He originally pleaded not guilty, and attorney Benjamin P. Hicks was appointed to represent Jimenez.  [Record Nos. 83, 86]

On July 2, 2019, Hicks moved to allow Jimenez to change his plea.  [Record No. 109] After granting the motion, [Record No. 110], the Court received a letter dated June 26, 2019, in which Jimenez described "dissatisfaction with counsel's performance."  [Record Nos. 111, 112]  The Court converted the re-arraignment hearing into a hearing addressing Jimenez's concerns regarding his attorney.  [*See* Record No. 111.]  During the hearing held July 12, 2019, Jimenez reported that "all issues in the letter ha[d] been resolved to his satisfaction," and he renewed his request for re-arraignment.  [Record No. 116]

The tendered written plea agreement acknowledged that the government could prove the facts underlying the alleged offense beyond a reasonable doubt.  [Record No. 114] In paragraph 8, Jimenez waived the right to appeal the plea, conviction, and sentence.  He further agreed that, "[e]xcept for claims of ineffective assistance of counsel, [he] also waive[d] the right to attack collaterally the guilty plea, conviction, and sentence."  [*Id.*]  During the re-arraignment hearing, the Court questioned Jimenez and concluded that "the waiver provisions of the written Plea Agreement [was] knowingly and intelligently made[,] and that the defendant [understood] the consequence of the waivers."  [Record No. 116]  The undersigned accepted Jimenez guilty plea and scheduled a sentencing hearing for October 18, 2019.  [*Id.*]

The criminal history section of Jimenez's Presentence Investigation Report ("PSR") included a Minnesota drug conviction that resulted in a term of probation extending into the

- 3 -

relevant period of the charged conduct.  [Record No. 213, p. 15]  The offense was assigned

one criminal history point.  And because Jimenez "committed the instant offense while under

a[] criminal justice sentence," his criminal history score was increased by two points under the

guidelines, placing him in criminal history category III.  *See* U.S.S.G. § 4A1.1(d).  The

resulting guideline range was 70 to 87 months.  [Record No. 213, p. 19]

On October 3, 2019, Jimenez filed *pro se* objections to his PSR.  [Record No. 140]  In

part, he contended that the Minnesota conviction should not be counted because he had filed a

collateral attack to challenge the conviction on August 14, 2019.  [*See* Record No. 140-1.]

However, on October 10, 2019, attorney Hicks filed a motion to withdraw one of Jimenez's

*pro se* objections that is not relevant here.  [Record No. 141]  However, the motion further

stated that Jimenez was aware his post-conviction challenge would have "no legal significance

unless it [wa]s resolved prior to the sentencing" hearing.  [*Id.* at p. 2]  Hicks further advised

Jimenez that, even if the prior conviction was vacated, the fact that he committed the instant

offense while on probation could still be counted against him.  [*Id.* at pp. 1-2]

During the sentencing hearing held on October 18, 2019, Jimenez orally withdrew the

remaining objections based on the pending collateral attack.  [*See* Record Nos. 143, 216.]  The

relevant discussion proceeded as follows:

> MR. HICKS: The Court has been made aware of the appellate procedure going
> on, but I'm suggesting to [the defendant] that those two objections also be
> withdrawn.  Because as I stated right now, it has no legal significance.  But you
> can either agree to it or not.
>
> (Defendant and counsel conferring.)
>
> MR. HICKS: Mr. Jimenez, do you want to withdraw the two objections
> pertaining to the criminal history point being assigned for the conviction that's
> being reviewed by an appellate court, and two points for being under court

supervision at the time of this offense?  Do you want to withdraw those two objections?

THE DEFENDANT: Yes.

THE COURT: All right.  Thank you.  Those objections will also be withdrawn. . . .

[THE COURT:] With regard to the criminal history section, information has been provided with regard to the conviction set forth in paragraph 45, which also results in not only a point for that conviction, but it's a recency score as well, that would increase the total score by two points.

That conviction, while it may be subject to a post-conviction motion, would still be countable under the guidelines under Section 4A1.2.

I would call the parties' attention specifically to the Application Notes contained in, I believe Application Note 6 as well as 10 may apply to those issues.  And again, those matters are properly assessed points. . . .

[THE COURT:] The Court will also sustain the motion filed by counsel to withdraw the objections.  We've gone through each of those and I will sustain the motion as well.  But I would note for the record that I've also made separate findings that the guidelines are properly calculated.

[Record No. 216, pp. 5-7]  Jimenez was sentenced to 87 month term of imprisonment, to be followed by three years of supervised release.[1]  [Record No. 145]

Jimenez filed the current motion on August 26, 2020, seeking a reduction of his term of incarceration based on the now-vacated Minnesota conviction.  [Record No. 201-1, pp. 7-12]  As a result, he contends that his sentence is now unconstitutional.  [*Id.* at p. 8] The government briefly responded that Jimenez waived the right to collaterally attack his sentence.[2]

---

[1]    The undersigned concluded that a sentence at the top of the guidelines range was necessary to reflect the seriousness of the offense and deter Jimenez from future criminal activity based upon his past conduct.  [Record No. 216, pp. 25-26]

[2]    The government also contended that "Jimenez fail[ed] to meet his burden of proving his prior state conviction was vacated" because his original petition included only a portion of

[Record No. 207]  Jimenez replied with a number of arguments seeking to excuse the waiver. [Record No. 210]

## II.    THE MAGISTRATE JUDGE'S RECOMMENDED DISPOSITION

Magistrate Judge Ingram recommended that Jimenez's motion be denied.  [Record No. 212]  He began by noting that Jimenez's motion did not argue that "his plea was not knowing and voluntary or that his plea resulted from ineffective assistance of counsel."  [*Id.* at p. 2] The latter conclusion stemmed from the fact that Jimenez "cite[d] the legal standards for an ineffective-assistance claim" but failed to "point[] to any deficient performance on the part of his attorney."  [*Id.*]

Magistrate Judge Ingram next concluded that Jimenez had proven by a preponderance of the evidence that his Minnesota conviction was "vacated 'on the ground that the conviction was obtained in violation of [Jimenez's] rights under the laws and constitution of the United States and the State of Minnesota.'"  [*Id.* at pp. 4-5 (quoting Record No. 201-2)]  Thus, if Jimenez were sentenced today, the conviction presumably would not increase his criminal history points.  [*Id.* at p. 5 (citing U.S.S.G. § 4A1.2 n.6, n.10)]

Turning to whether this development entitles Jimenez to resentencing, the Magistrate Judge first noted the defendant's reliance on *Johnson* and its progeny would seemingly entitle Jimenez to relief.  [Record No. 212, pp. 5-6 (citing *Johnson*, 544 U.S. at 302; *Watt*, 162 F. App'x at 503)]  However, he acknowledged that a knowing and voluntary waiver is fully enforceable in the Sixth Circuit.  [Record No. 212, p. 7]  The defendant in *Johnson* had not executed a waiver, but at least one court has held that an exception to the general rule of

_____

the Minnesota order.  [Record No. 207, p. 3]  This argument has since been abandoned, and it is unnecessary for the Court to address it further.

enforcement of valid waivers exists when a federal sentence is predicated on a vacated state conviction. [*Id.* (citing *United States v. Foley*, 273 F. Supp. 3d 562 (W.D. Pa. 2017)] The court in *Foley* found that enforcing a waiver against a defendant in such a situation would amount to a "miscarriage of justice" because it would not accord with "the terms of the bargain that the parties contemplated at the time [the defendant] originally pled guilty." *Foley*, 273 F. Supp. 3d at 570-71.

Considering the persuasive weight of this holding, Magistrate Judge Ingram noted that, unlike the Third Circuit, the Sixth Circuit has not adopted the miscarriage-of-justice exception to an otherwise valid collateral-attack waiver. [Record No. 212, pp. 8-10] The only exception recognized by the Sixth Circuit concerns sentences above the statutory maximum penalty. [*Id.* at p. 10 (citing *Vowell v. United States*, 938 F.3d 260, 268 (6th Cir. 2019)] And here, Jimenez was sentenced well below the statutory maximum. [*See* Record No. 114, ¶ 4.] Thus, Magistrate Judge Ingram concluded that the motion is barred by the waiver and recommended that the motion for collateral relief be denied. [Record No. 212, p. 11]

Considering whether a Certificate of Appealability should issue, the Magistrate Judge surveyed "several unpublished decisions from the Sixth Circuit" that suggest a miscarriage-of-justice exception. [*Id.* at pp. 11-14] And from these unpublished decisions, he concluded that it is possible an exception could be recognized in an appropriate case. [*Id.* at p. 14] Further, if the exception is recognized, the Magistrate Judge reasoned that it could be applied to Jimenez based on the holdings in *Foley* and *Watt*. [*Id.* (citing 273 F. Supp. 3d at 570-71; 162 F. App'x at 503)] Accordingly, he recommended that a Certificate of Appealability issue.

## III.   THE PARTIES' OBJECTIONS

As noted above, Jimenez makes two primary objections.  First, he contends that his motion "should have been construed as containing an ineffective assistance of counsel claim." [Record No. 219, p. 3]  He notes that "approximately half" of the memorandum filed in support of the motion "set[] forth" his understanding of the ineffective-assistance-of-counsel analysis under *Strickland v. Washington,* 466 U.S. 688 (1984).  [*Id.*]  Although Jimenez failed to provide any factual arguments in support of counsel's alleged ineffectiveness, he objects that the leniency owed to *pro se* filers required the Magistrate Judge to address the claim.  [*Id.*]

In support of the allegedly overlooked claim, Jimenez argues that Hicks' assistance was unconstitutionally ineffective because, despite acknowledging the ongoing collateral attack on the Minnesota conviction, Hicks failed to seek a continuance of the sentencing hearing until the state challenge was resolved.  [Record No. 219, p. 4]  Jimenez also contends that Hicks "failed to preserve this very specific and nuanced issue for any potential, future collateral attack" by suggesting that the Minnesota challenge had no legal significance.  [*Id.* at pp. 4-5] If Hicks had "preserved this one issue as an exception to the waiver on collateral attacks," Jimenez claims that he could have more effectively challenged his sentence.  [*Id.* at p. 5]  In summary, Jimenez argues that his counsel's failure to either seek a continuance or "negotiate a narrow exception to the waiver . . . constitutes deficient performance under *Strickland*."  [*Id.* at pp. 6-7]

Alternatively, Jimenez argues that enforcing the waiver would amount to a miscarriage of justice.  On this point, he cites the same cases as the Magistrate Judge but reaches a contrary conclusion.  He contends that not reducing his increased sentence would amount to a clear

miscarriage of justice.  [Record No. 219, p. 8]  And to prevent an unjust result, he suggests that the Court disregard the waiver.  [*Id.*]

Jimenez contends that, if he were resentenced under either theory, all three criminal history points should be eliminated" from the guidelines calculation, resulting in a non-binding range of 57 to 71 months.

The United States objects only to Magistrate Judge Ingram's conclusion that a Certificate of Appealability is warranted.  It notes that, "[i]n all of the cases in the Recommended Disposition in which relief was granted, there was no appellate or collateral relief waiver," or the defendant's right to be resentenced was conceded.  [Record No. 218, p. 3]  Further, it suggests that there is no indication that Jimenez's case is the appropriate case for recognizing a miscarriage-of-justice exception.  The United States argues that such an exception would be "limited to consideration of an illegal sentence," such as the current exception for sentences above a statutory maximum.  [*Id.* at p. 4]

The government further notes that Jimenez's sentence was not illegal because it was well below the statutory maximum, within the correct Guidelines range at the time of sentencing and supported by the sentencing factors of 18 U.S.C. § 3553(a).  [Record No. 218, p. 5]  It also notes that Jimenez chose to attack the state conviction *after* pleading guilty to the federal crime, indicating that he was aware the conviction would impact his sentence.  [*Id.*]

Finally, the government contends that *Foley* is an outlier because the underlying convictions at issue had been obtained in violation of the defendant's right to counsel, and the defendant consented to the waiver "'in the most general terms.'"  [Record No. 218, p. 6 (quoting 273 F. Supp. 3d at 571)]  It argues that whatever persuasive value *Foley* may have, it

is "not analogous" to the present matter and does not necessitate issuance of a Certificate of Appealability.  [*Id.* at pp. 6-7]

## IV.    STANDARD OF REVIEW

Under § 2255, a prisoner sentenced by the Court may file a motion

> claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.

28 U.S.C. § 2255.  A "challenge to the enhancement of a federal sentence based on a void state conviction" is a cognizable non-constitutional claim under § 2255.  *Watt*, 162 F. App'x at 503.

When a Magistrate Judge is designated to submit proposed findings of fact and a recommendation for disposition, 28 U.S.C. § 636(b)(1) empowers the Court to "accept, reject, or modify, in whole or in part," the recommendation.  For issues that neither party objects to, "[t]he statute does not on its face require any review at all."  *Thomas v. Arn*, 474 U.S. 140, 149 (1985).  But where a party files an objection, the Court "shall make a *de novo* determination of those portions of the . . .  recommendations to which objection is made."  28 U.S.C. § 636(b)(1).

## V.    LEGAL ANALYSIS

### A.    INEFFECTIVE ASSISTANCE

Jimenez argues that the government and the Magistrate Judge overlooked an ineffective-assistance-of-counsel claim in his petition.  But having reviewed the petition, the Court finds the objection unfounded.  A "conclusory statement in [a petitioner's] brief in support of [a] § 2255 motion . . . is wholly insufficient to raise the issue of ineffective assistance of counsel."  *Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000) (petitioner merely stated

that "counsel's failure to raise the issue either at sentencing or on direct appeal constitutes ineffective assistance of counsel"). Here, Jimenez's statements concerning counsel's obligations were less than conclusory. He merely stated in a section of his memorandum entitled "Cognizable Issues Under § 2255" the standard for ineffective-assistance claims under *Strickland* and its progeny. [*See* Record No. 201-1, pp. 4-6.] The "Argument" section of Jimenez's brief contains no reference to Hicks's assistance.[3]

Further, later filings of a petitioner may be indicative of intent to state an ineffective-assistance claim. *See Elzy*, 205 F.3d at 886. Here, Jimenez's reply to the government's response in opposition to his petition includes the following passage, which the Court quotes in full to explain its interpretation:

> The government concludes that nor does Jimenez allege that his counsel provided ineffective assistance. Therefore, his claim should be denied. Obviously, the government is out of context on his allegation. How is it, that Jimenez can present that his attorney rendered ineffective assistance by not challenging his enhancement based on the use of his prior Minnesota conviction when said conviction was declared unconstitutional near one year after Jimenez was sentenced on July 12, 2019. Government's response is simply out of context.

[Record No. 210, p. 3] The Court construes this as a clarification by Jimenez that he is *not* raising an ineffective-assistance-of-counsel claim. The first two sentences relay Jimenez's understanding of the government's position: that the waiver bars Jimenez's petition because it does not raise an ineffective-assistance claim. Jimenez then suggests that this argument is "out of context," which the Court believes he means irrelevant, because he is not raising an

---

[3] Other potential avenues of relief under § 2255 are mentioned in Jimenez's cognizable issues section but omitted from his argument. For example, he notes that a defendant may be entitled to an evidentiary hearing despite the fact that he did not request one, and he repeatedly refers to counsel's obligations "at trial" despite pleading guilty. [Record No. 201-1, pp. 4-6]

ineffective-assistance claim.  The next sentence explains why: Jimenez states that counsel could not have rendered ineffective assistance by not foreseeing that the conviction would be vacated "near one year after Jimenez was sentenced."  And if the Court had any doubts about the issue Jimenez intended to raise in his petition, the next paragraph clarifies that "[t]he question here is whether the waiver stands post the awaken [sic] of a new fact, a fact not available to the defendant at the time of signing the waiver."  [Record No. 210, p. 3]  Thus, Jimenez's petition raises the single issue of whether to excuse the waiver.

The Court's obligation to liberally construe *pro se* filings does not change its conclusion.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  In an objection to the recommended disposition, appointed counsel argues that Jimenez raised an ineffective assistance claim under the lenient standards applied to *pro se* filings.  [Record No. 219, p. 3]  Counsel acknowledges that Jimenez failed to "flesh out any factual arguments" in favor of such a claim or point to any deficient performance by Hicks.  [*Id.*]  But counsel suggests that a "cursory review of the docket" would have revealed the constitutionally-defective performance upon which Jimenez allegedly intended to rely.  [*Id.* at pp. 3-4]

However, counsel's objection does not address the fact that Jimenez *affirmatively indicated* his intent not to raise an ineffective-assistance claim.  The Court is not required to construe a 2255 motion as raising a claim that a defendant does not wish to raise, and objections are not a proper vehicle for raising new grounds of relief.  Thus, the Court concludes that Jimenez's petition raises the sole issue of whether the waiver bars his collateral attack.

## B.  ENFORCABILITY OF THE WAIVER

A defendant "may waive any right, even a constitutional right, by means of a plea agreement."  *Fleming*, 239 F.3d at 763–64 (quotation omitted).  A waiver is valid and

enforceable against nearly any asserted right, as long as it is entered into knowingly and voluntarily by the defendant. *See Davila v. United States*, 258 F.3d 448, 451 (6th Cir. 2001) (citing *Town of Newton v. Rumery*, 480 U.S. 386, 393 (1987)). The Sixth Circuit applies "traditional contract law principles" to plea agreements because they are contractual in nature. *United States v. Harris*, 473 F.3d 222, 225 (6th Cir. 2006). "[A] plea agreement, like any other contract, allocates risk. By waiving the right to appeal, a defendant assumes the risk that a shift in the legal landscape may engender buyer's remorse." *United States v. Morrison*, 852 F.3d 488, 490 (6th Cir. 2017) (citation omitted). Courts presume that, in return for the defendant's assumption of the risk, he or she receives "a means of gaining concessions from the government." *United States v. Toth*, 668 F.3d 374, 379 (6th Cir. 2012). Thus, a knowing and voluntary plea agreement presumably reflects the bargain the parties were willing to accept, and courts within the Sixth Circuit generally enforce the agreements.

An exception exists, however, for sentences that are "illegal", which means "statutorily excessive based on a subsequent change in the law." *Vowell v. United States*, 938 F.3d 260, 267-68 (6th Cir. 2019). This is because a "a claim that a sentence is statutorily excessive . . . is separate and distinct from a claim that the waiver was agreed to unknowingly or involuntarily." *Id.* at 267. In *Vowell*, a subsequent change in law rendered a defendant's sentence greater than the statutory maximum penalty. *Id.* at 268 (explaining that the defendant's fifteen-year sentence exceeded the new maximum ten-year penalty).

Some circuits acknowledge a broader exception. In these circuits, a knowing and voluntary plea agreement containing an appellate waiver is only "presumptively valid," and courts remain free to disregard them "if denying a right of appeal would work a miscarriage of justice." *United States v. Teeter*, 257 F.3d 14, 25 (1st Cir. 2001); *see also United States v.*

*Khattak*, 273 F.3d 557, 562 (3d Cir. 2001) (collecting cases and acknowledging that "an unusual circumstance . . . amounting to a miscarriage of justice may invalidate [a] waiver"). Rather than identify specific errors contemplated by the exception, they have identified the following considerations:

> the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result.

*Teeter*, 257 F.3d at 26.

Applying these considerations, the United States District Court for the Western District of Pennsylvania excused a collateral-attack waiver in an analogous situation. *Foley*, 273 F.Supp.3d at 571. The "unusual facts of th[e] case" included the following: "the inclusion in Foley's criminal history calculation of two relatively minor offenses . . . which have since been vacated or resolved in his favor"; the resulting fact that Foley was "sentenced in accordance with a guidelines range that was . . . greater than it should have been"; the fact that the prior convictions were obtained in violation of Foley's right to counsel; the lack of the sentencing judge's explanation of the waiver during his plea colloquy; and Foley's prior attack on his trial counsel's effectiveness. *Id.* at 570-72. These "unique circumstances" led the court to conclude that "enforcement of the collateral waiver provision would result in a miscarriage of justice." *Id.* at 571.

Jimenez urges the Court to excuse the waiver based on this exception. He relies on *Watt*, in which the Sixth Circuit reasoned that "it would be a miscarriage of justice to enhance Watt's federal sentence on the basis of state convictions which have been vacated because they were void." 162 F. App'x at 503. The government contends that neither *Watt* nor any other

Sixth Circuit decision has addressed the current situation because the defendants in those cases had not executed a valid waiver.  [Record No. 218, p. 3]

The Court agrees with the Magistrate Judge that the waiver bars Jimenez's motion. [*See* Record No. 212, p. 11.]  No miscarriage-of-justice exception to otherwise valid collateral-attack waivers has been recognized by the Sixth Circuit, and this Court is bound to enforce the general rule.  Further, even if such an exception had been recognized, it is unclear whether it would apply to this case.  The circuits applying the exception have provided considerations for its application, but the Sixth Circuit may be inclined to delineate the circumstances in different terms.

For this reason, *Foley* is also unpersuasive.  Even if the Sixth Circuit adopted the Third Circuit's exception and its considerations, Jimenez's case is not identical to Foley's.  The most important difference is that Jimenez did not assent to the plea agreement in only general terms. *See Foley*, 273 F.Supp.3d at 571.  Instead, Jimenez acknowledged that he understood the waiver provision and its consequences, and the Court independently confirmed that it was knowingly and intelligently made.  [Record No. 116]

Therefore, Jimenez's motion is doomed by the waiver.  He expressly waived his "right to attack collaterally the guilty plea, conviction, and sentence."  [Record No. 114]  The Court found that he entered the agreement knowingly and voluntarily.  He does not argue that his sentence is illegal, nor could he.  Under the Sixth Circuit's general rule, he is bound by the terms of the written plea agreement.

### C.    CERTIFICATE OF APPEALABILITY

A Certificate of Appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *Miller-El*

*v. Cockrell*, 537 U.S. 322, 336 (2003).  "[A] substantial showing of the denial of a right includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (quotation omitted).

As noted previously, Magistrate Judge Ingram recommended that a Certificate of Appealability be issued.  This recommendation was based on a series of unpublished opinions that make it "reasonably possible the Sixth Circuit could formally recognize and describe the miscarriage-of-justice exception in an appropriate case."  [Record No. 212, p. 14]  One panel of the Sixth Circuit collected the unpublished cases in 2013:

> Although we have never expressly recognized the miscarriage-of-justice exception to the enforcement of appellate waivers in a published decision, we have implicitly recognized it in several unpublished decisions. *See United States v. Lee*, 464 Fed. App'x. 457, 458 (6th Cir.2012) (per curiam) (enforcing appellate waiver in part because doing so "will not result in a miscarriage of justice"); *United States v. Hower*, 442 Fed. App'x 213, 215 (6th Cir.2011) (noting that "[no] miscarriage of justice [will] occur if the sentence is not reviewed" (citing [*United States v.*] *Gwinnett*, 483 F.3d [200], [] 203 [(6th Cir. 2007)])); *United States v. Jones*, 425 Fed. App'x. 449, 456 (6th Cir.2011) (describing the defendant's miscarriage-of-justice argument as "correct regarding the well-settled principle [that sentencing cannot be at the district court's whim]" but finding that "his ... challenges do not rise to the level that this principle contemplates" (citing [*United States v.*] *Caruthers*, 458 F.3d [459], [] 471 [(6th Cir. 2006)])).

*United States v. Mathews*, 534 F. App'x 418, 425 (6th Cir. 2013).

In each of these cases, the court either refused to adopt the exception because it found that the argument failed on the merits, or it implied that a waiver would not be enforced if it would result in a miscarriage of justice.  *See Lee*, 464 F. App'x at 458 ("enforcing [Lee's] appellate-waiver provision will not result in a miscarriage of justice"); *United States v. Weld*,

- 16 -

619 F. App'x 512 (6th Cir. 2015) (an erroneous Guidelines calculation is "not a miscarriage of justice"). Most recently, a panel of the Sixth Circuit stated that "[w]e have never expressly recognized such an exception in a published decision, although we have implicitly recognized it in numerous unpublished decisions." *United States v. Middlebrooks*, No. 19-5856, 2020 WL 4516003, at *1 (6th Cir. Feb. 13, 2020).

Few clear conclusions can be drawn from these nonbinding decisions. The Magistrate Judge drew from them a willingness to adopt the exception in an appropriate case. [Record No. 212, p. 14] However, the government argues that any exception would be defined similarly to the current exception for illegal sentences. [Record No. 218, p. 4] Implicit in this argument is the suggestion that Jimenez's case is not the proper vehicle for recognizing such an exception. [*See id.* at pp. 5; 6-7.]

The question raised by Jimenez's motion "is adequate to deserve encouragement to proceed further." *See Slack*, 529 U.S. at 475. Jimenez's sentence was based on a fact that the Supreme Court deemed important enough to renew the limitations period for bringing a § 2255 motion. *Johnson*, 544 U.S. at 302. The Sixth Circuit has made clear that, in the absence of a waiver, Jimenez's circumstance triggers resentencing. *Watt*, 162 F. App'x at 503. And it has expressed a willingness to adopt exceptions to the general rule of enforceability of waivers in "limited circumstances." *Matthews*, 534 F. App'x at 424-25 (noting that "other circuits primarily use a miscarriage-of-justice rationale" to identify circumstances "under which an appellate waiver may be ignored").

It is true that the Sixth Circuit may refuse to recognize such an exception in Jimenez's case. For example, the court has held that the illegal-sentence exception does not extend to sentences imposed under an erroneous guidelines range where a defendant executed a valid

waiver. *Weld*, 619 F. App'x at 513.  This is because "[a] district court's supposed misreading of the demands of the guidelines is the sort of error anticipated by [an] appellate waiver[]." *Mathews*, 534 F. App'x at 426.  Further, Jimenez's case differs from a situation in which an unanticipated change in the law rendered a sentence excessive.  In this case, Jimenez's Minnesota challenges were pending at sentencing.  [*See* Record No. 216, pp. 5-7.]  His acknowledgement of the waiver's consequences should have informed him of his obligations under the agreement. *See Harris*, 473 F.3d at 226.

However, whether Jimenez's case is the appropriate vehicle for applying the exception is not for this Court to decide.  Even if he ultimately is not entitled to benefit, the question remains whether an exception to the general rule exists in a situation analogous to Jimenez's.  And courts are discouraged from considering the merits of a challenge when weighing the need for a Certificate of Appealability.  *Miller-El*, 537 U.S. at 331 ("a [Certificate of Appealability] ruling is not the occasion for a ruling on the merit of petitioner's claim").  Because clarity surrounding these considerations potentially would be beneficial to Jimenez and future litigants, the undersigned agrees Magistrate Judge Ingram that a Certificate of Appealability should issue.

## VI.    CONCLUSION

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1.     The Magistrate Judge's Recommended Disposition [Record No. 212] is **ADOPTED** and **INCORPORATED** by reference.

2.     Defendant/Movant Eliezer Alberto Jimenez's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [Record No. 201] is **DENIED**.  His claims are

**DISMISSED**, with prejudice, and his collateral proceeding is **STRICKEN** from the Court's docket.

3.    A Certificate of Appealability shall issue to Defendant/Movant Eliezer Alberto Jimenez on the sole question of whether a defendant may obtain resentencing *via* a 2255 collateral attack, after a state conviction is set aside resulting in a lower criminal history score, despite a written waiver of collateral-attack rights in a plea agreement.

4.    The Clerk of Court is directed to forward a copy of this Memorandum Opinion and Order to the United States Court of Appeals for the Sixth Circuit.

Dated: January 5, 2021.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky

- 19 -